UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| A.B. CONCRETE COATING INC., | No. 2:20-cv-0211-EFB |
| --- | --- |
| Plaintiff, | |
| v. | ORDER |
| WELLS FARGO BANK, N.A., et al., | |
| Defendants. | |

Plaintiff initiated this action in Placer County Superior Court; it was removed to this court by defendant Wells Fargo Bank, N.A., on January 29, 2020 on the basis of diversity jurisdiction.[1] ECF No. 1. Wells Fargo previously moved to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6). ECF No. 7. The motion was granted with leave to amend as to all but one claim. Plaintiff's claim for conversion under California Commercial Code § 3420(a) was dismissed with prejudice, and all remaining claims were dismissed with leave to amend. ECF No. 14 at 12.

Plaintiff has since filed a first amended complaint (ECF No. 17) which Wells Fargo now moves to dismiss, again for failure to state a claim (ECF No. 18). For the reasons that follow, the court finds that the motion must be granted with respect to plaintiff's negligence claims and otherwise denied.

---

[1] Both parties have consented to the jurisdiction of the magistrate judge under 28 U.S.C. § 636(c)(1). ECF Nos. 4, 5.

1

# I. Legal Standard

A complaint may be dismissed for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Chubb Custom Ins. Co*., 710 F.3d at 956. Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim. *Franklin v. Murphy*, 745 F.2d 1221, 1228-1229 (9th Cir. 1984).

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc*., 710 F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

# II. Allegations of the First Amended Complaint

Plaintiff alleges that it established a business banking account with defendant bank in 2010. ECF No. 17, ¶ 9. As part of that process, plaintiff was provided a Wells Fargo Deposit Account Agreement. *Id.*

On or around December 31, 2018, plaintiff discovered that its former volunteer bookkeeper, Amber Clark, had been writing company checks to herself, on which she forged the signature of plaintiff's owner, Brian Fenno. *Id*., ¶ 10. Ms. Clark successfully cashed the checks – which totaled $482,244.76 – at various Wells Fargo branches in Placer County. *Id.* Plaintiff also

/////

1  discovered that checks payable to Ms. Clark's husband, Kai Clark, amounting to $32,939.66 and
2  also bearing forgeries of Fenno's signature, had been successfully cashed. *Id.*, ¶ 11.
3      Plaintiff seeks to recover this money from Wells Fargo under three legal theories: (1)
4  breach of the Deposit Account Agreement; (2) negligence; and (3) violation of the California
5  Commercial Code.

### III.  Defendant's Evidence and Plaintiff's Objections Thereto

7      Defendant submits with its motion a declaration of Karen Nelson authenticating an
8  attached "Business Account Agreement." ECF No. 18-2. Ms. Nelson located the Business
9  Account Agreement after a "diligent search and reasonable inquiry to identify and locate the
10 Deposit Account Agreement in effect in or around 2010" referenced in the amended complaint.
11 *Id.*, ¶ 3. According to Ms. Nelson, the Deposit Account Agreement used by the bank in 2010 was
12 called a Business Account Agreement. *Id.*
13     Plaintiff objects to the declaration and appended Business Account Agreement, ECF No.
14 21, arguing that these items of evidence go impermissibly beyond the pleadings at this stage of
15 the case.
16     Courts generally may not consider evidence beyond the pleadings when considering a
17 motion to dismiss under Rule 12(b)(6). *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d
18 984, 998-99 (9th Cir. 2011). However, if three conditions are met, the court may consider
19 evidence that the complaint relies on even though it was not attached thereto. *Id.* Those
20 conditions are that: (1) the complaint refers to the evidence; (2) the evidence is central to
21 plaintiff's claim; and (3) no party questions the authenticity of the evidence. *Id.*
22     Ms. Nelson's declaration does not state that the Business Account Agreement she located
23 was definitely the document provided to plaintiff, and plaintiff opposes the court's consideration
24 of it. It is therefore not clear that the Business Account Agreement provided by Ms. Nelson is the
25 same document as the Deposit Account Agreement referred to by the amended complaint and on
26 which plaintiff's breach of contract claim relies.[2]  Accordingly, the court sustains plaintiff's

---

[2] Thus, a dispositive motion predicated on the terms of the Business Account Agreement and dependent upon questions as to which documents constitute that agreement are more properly

objection to the declaration and its attachment and will not consider the Business Account Agreement in determining the merits of the instant motion.

The court will similarly deny defendant's request that the court take judicial notice of defendant's practice of sending monthly banking statements to its account holders. Federal Rule of Evidence 201(b) provides that the court may judicially notice "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Defendant provides a number of California cases in which judicial notice was taken of a bank's custom of sending out monthly statements, but notably does not cite a single federal case applying Rule 201. Plaintiff objects that this custom is subject to reasonable dispute and thus judicial notice is inappropriate, and the court agrees. While banks, including defendant, may customarily send out monthly statements, it is certainly conceivable that this custom is fallible and that the parties may dispute whether, in this case, statements were provided, or were accurate. Accordingly, the court declines to judicially notice any custom by defendant to send out monthly account statements.

### IV. Analysis

#### a. Negligence Claims

Defendant first argues that plaintiff's common-law negligence claims fail because they are precluded by various provisions of the California Uniform Commercial Code. Section 1103(b) of that code provides:

> Unless displaced by the particular provisions of this code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause supplement its provisions.

/////

/////

---

presented as a motion under Rule 56.

Section 4406 deals specifically with the relationship between a bank and its customer with regard to forged checks:

> (c) If a bank sends or makes available a statement of account or items pursuant to subdivision (a), the customer shall exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized.  If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer shall promptly notify the bank of the relevant facts.
>
> (d) If the bank proves that the customer failed, with respect to an item, to comply with the duties imposed on the customer by subdivision (c), the customer is precluded from asserting any of the following against the bank:
>
>> (1) The customer's unauthorized signature or any alteration on the item if the bank also proves that it suffered a loss by reason of the failure.
>>
>> (2) The customer's unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding 30 days, in which to examine the item or statement of account and notify the bank.
>
> (e) If subdivision (d) applies and the customer proves that the bank failed to exercise ordinary care in paying the item and that the failure contributed to loss, the loss is allocated between the customer precluded and the bank asserting the preclusion according to the extent to which the failure of the customer to comply with subdivision (c) and the failure of the bank to exercise ordinary care contributed to the loss. If the customer proves that the bank did not pay the item in good faith, the preclusion under subdivision (d) does not apply.
>
> (f) Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer (subdivision (a)) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration. If there is a preclusion under this subdivision, the payer bank may not recover for breach of warranty under Section 4208 with respect to the unauthorized signature or alteration to which the preclusion applies.

Wells Fargo contends that the specific provisions of § 4406 displace common-law negligence with respect to claims against a bank by its customer for the bank's payment of checks on which

/////

the customer's signature was forged. Plaintiff argues that the code does not displace common-law negligence claims but, rather, simply restates "the negligence standard." ECF No. 19 at 4.

Resolution of this disagreement is complicated by the lack of a clear ruling on the issue by the California Supreme Court. Plaintiff relies on an opinion generated by two justices in *Sun'n Sand, Inc. v. United Cal. Bank*, 21 Cal.3d 671 (1978) (lead opinion by Mosk, J., with Tobriner, Acting C.J., concurring, Richardson, J., concurring in the result, and Clark, J., and Sullivan, J., concurring in part and dissenting in part). Defendant relies on a more recent California Court of Appeal decision, *Roy Supply, Inc. v. Wells Fargo Bank*, 39 Cal. App. 4th 1051 (1995), arguing that *Sun'n Sand* has no precedential value and is factually distinguishable from the instant matter. The court agrees that *Roy Supply*, not *Sun'n Sand*, provides the closest application of the relevant California law to the facts presented by this case.

In *Sun'n Sand*, plaintiff corporations sued United California Bank ("UCB") after their employee, Eloise Morales, altered checks from plaintiffs that were made payable to UCB and somehow convinced UCB to deposit the funds into her personal account. 21 Cal.3d at 678. Plaintiffs did not have an account with UCB; rather the checks were drawn on plaintiff's account with another bank (Union Bank). *Id.* Morales prepared company checks payable to UCB for small amounts. *Id.* She then obtained authorized signatures on the checks from a corporate officer who believed that they represented small sums owed to UCB. *Id.* In fact, the company did not owe the money to UCB. *Id.* Morales then altered the amounts on the checks, increasing them to several thousands of dollars. *Id.* She presented the checks to UCB (the named payee on all of the checks), who then "caused or permitted" the proceeds of the checks to be deposited into Morales's personal bank account. *Id.*

The plaintiff corporations sued both Union Bank (who had payed out of plaintiff's corporate account on the fraudulent checks) and UCB (who had collected the money from Union Bank and allowed it to be deposited into Morales's account). *Id.* But the factual similarity of *Sun'n Sand* with the instant case ends there; the appeal did not address any claims against Union Bank (in a factually analogous situation to Wells Fargo, here) but instead was concerned only with the claims against UCB.

Plaintiff nevertheless relies on *Sun'n Sand* (and another case uncritically following *Sun'n Sand* (*Joffe v. United Cal. Bank*, 141 Cal. App. 3d 541, 557 (1983)), due to the lead opinion's conclusions that California Uniform Commercial Code § 3405 did not displace the plaintiffs' common-law negligence claim against UCB and that § 4406(4) (now § 4406(f)) applies only to "actions based on warranties set forth in the California Uniform Commercial Code" and not to negligence claims.[3]  *Id.* at 695, 699.  There are a few reasons why these conclusions do not help plaintiff's negligence claims in this case.

First, neither the lead opinion in *Sun'n Sand*, nor its conclusions regarding negligence claims and the California Uniform Commercial Code, were subscribed to by a majority of the court and therefore do not constitute precedential authority.  *Del Mar Water, etc. Co. v. Eshleman*, 167 Cal. 666, 682 (1914) ("any proposition or principle stated in an opinion is not to be taken as the opinion of the court, unless it is agreed to by at least four of the justices."); *Roy Supply*, 39 Cal. App. 4th at 1067-68 (collecting cases); *Mac v. Bank of Am.*, 76 Cal. App. 4th 562, 565 n.1 (1999).

/////

---

[3] Section 3405(b) addresses the relative rights and obligations when an entity pays on a check fraudulently endorsed by an employee:

> For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee or a person acting in concert with the employee makes a fraudulent indorsement of the instrument, the indorsement is effective as the indorsement of the person to whom the instrument is payable if it is made in the name of that person. If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

A "fraudulent indorsement" is "(A) in the case of an instrument payable to the employer, a forged indorsement purporting to be that of the employer, or (B) in the case of an instrument with respect to which the employer is the issuer, a forged indorsement purporting to be that of the person identified as payee."  Cal. U. Comm. Code § 3405(a)(2).  Section 3405 is inapplicable in this case, where the complaint does not allege that the checks made payable to the Clarks were fraudulently indorsed by other individuals.

Second, *Sun'n Sand* addressed a dispute between a collecting bank and the customer of a *different bank*. It did not involve a dispute between a bank customer and the bank with which the customer holds an account (sometimes called a "payor bank"). "[U]nder the [California Uniform Commercial] Code the rights and liabilities of a payor bank to its customer are treated separate and apart from the rights and liabilities of a payee/depositary/collecting bank. Since *Sun'n Sand* did not involve a dispute between a payor bank and its customer, it may not be considered authority with respect to that relationship." *Roy Supply*, 39 Cal. App. 4th at 1068.

In fact, the two-justice lead opinion in *Sun'n Sand* described the duty owed by a bank to be "narrowly circumscribed: it is activated only when checks, not insignificant in amount, are drawn *payable to the order of a bank* and are presented to the payee bank by a third party seeking to negotiate the checks for his own benefit." 21 Cal.3d at 695. Imposing such a duty on banks was fair, the justices opined, because the "obvious irregularity" of such a transaction should alert the payee bank that "fraud may be in progress." *Id.* at 696. This unusual factual situation is not presented by the instant amended complaint. Instead, plaintiff alleges that Mr. and Ms. Clark made the fraudulent checks payable to themselves, not to Wells Fargo.

That situation is specifically governed by § 4406, which describes the duties of care between a bank and its customer where the bank accepts forged checks to pay funds out of the customer's account. The statute expressly delineates when such duties should be considered (subsections (c), (d), and (e)) and when they must not be (subsection (f)). As the Court of Appeal noted in *Roy Supply*,

> to adopt the construction urged by plaintiffs and purportedly supported by the lead opinion in *Sun'n Sand*, we would be compelled to disregard the clear and unambiguous language of section 4406, subdivision (4) [now (f)], and to conclude in essence that "[w]ithout regard to care or lack of care" means "[w]ithout regard to care or lack of care [*unless there was a lack of care*]."

39 Cal. App. 4th at 1070 (emphasis in original). The court declined to read the statute in this insensible fashion, as does this court. *Id.* California Uniform Commercial Code § 1103(b) retains those elements of the common law not displaced by particular provisions of the Code.

8

Section 4406, which provides particular rules governing the duties between a customer and a bank with regard to forged checks, displaces common-law rules governing the duties between those parties in that situation, and thus displaces plaintiff's negligence claims against defendant here.[4] *Id.* at 1066-67.[5]

### b. **Contractual and Statutory Claims**

Though plaintiff cannot pursue a negligence claim against defendant, it has also asserted that Wells Fargo breached the contract between the parties and violated California Uniform Commercial Code § 4401 "Circumstances in which bank may charge customer's account," which provides that a "bank may charge against the account of a customer an item that is properly payable from that account. . . . An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank." Wells Fargo argues that these claims should be dismissed because plaintiff has not pleaded sufficient facts supporting them. The court disagrees.

To state a claim for breach of contract under California law, a plaintiff must allege: (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to the plaintiff. *Maxwell v. Dolezal*, 231 Cal. App. 4th 93, 97-98 (2014). While there is some divergence of opinions in the California courts over whether a plaintiff must plead all provisions of a written contract (or attach a copy to the complaint) or must plead only those provisions it alleges the defendant to have breached, Witkin California Procedure advises the latter rule. 5 Witkin, *Cal. Procedure*, Pleading § 520. Because of the deference accorded to the non-moving party at this stage of the proceedings, the court will

---

[4] The court notes that § 4406 does address (and thus does not displace) negligence claims by a customer against a bank that are not premised on forged checks. *Roy Supply*, 39 Cal. App. 4th at 1066-67 ("Where, as here, the only alleged negligence was in accepting the forged signatures and making payment on them, an essential element of the cause of action is proof that the signatures were forged and it necessarily follows that the plaintiffs cannot establish their causes of action for negligence to the extent they are precluded from asserting the fact of the forgeries [under § 4406(f)]."). All of the negligence claims in this action are premised on proof of the fact that the checks were forged. ECF No. 17 at 7.

[5] Because the court finds that plaintiff's negligence claims are precluded by § 4406(f), it need not consider defendant's additional arguments in favor of dismissing the negligence claims.

1  require only that the amended complaint plead those provisions of the contract it alleges that
2  Wells Fargo has breached.  Plaintiff has done so here, and it has also alleged the four elements
3  listed above.  ECF No. 17 at 4-6.
4       Defendant argues that the contract required plaintiff to review its monthly statements from
5  Wells Fargo and notify the bank within a certain time window of any irregularities, and that the
6  amended complaint must be dismissed because plaintiff has not alleged its compliance with this
7  specific provision of the contract.  (Plaintiff merely alleges generally that it complied with its
8  obligations under the contract.).  It may prove to be true that plaintiff, contrary to its allegation,
9  failed to comply with its obligations under the contract in such a way that it may not recover on a
10 breach of contract claim against defendant.  The court must, however, make that determination
11 with the benefit of the evidence that may be presented by the parties on summary judgment or
12 other further proceedings but which may not be considered by the court on this motion to dismiss.
13      Defendant similarly argues that plaintiff's statutory claim is not sufficiently pleaded
14 because plaintiff has not specifically alleged that it complied with its obligations under § 4406(c)
15 and (f) to review its statements and report irregularities to the bank.  Absent California authority
16 holding that such specific pleading is required in actions brought under § 4401, the court will not
17 impose this heightened specificity pleading requirement.  Instead, the court will defer
18 determination of the issue of plaintiff's compliance with its statutory obligations to later
19 proceedings.

20 **V.     Order**

21      Accordingly, it is hereby ORDERED that defendant's November 4, 2020 motion to
22 dismiss plaintiff's amended complaint (ECF No. 18) is granted as to plaintiff's negligence claims
23 and otherwise denied.
24      So ordered.
25 DATED:  December 29, 2020.
                          EDMUND F. BRENNAN
26                           UNITED STATES MAGISTRATE JUDGE
27
28